**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MIKE A. LOPEZ-RAMOS, PATSY
PACHECO-DIAZ, per se and in
representation of their minor
children NL-P and BL-P,
    **Plaintiffs,**

      v.

CEMEX DE PUERTO RICO, INC., D/B/A
CEMEX PUERTO RICO, ENERSY
ENGINEERING CORPORATION, JOHN
DOE, RICHARD ROE, and their
respective insurance companies,

    **Defendants,**

**CIVIL NO. 19-1443 (RAM)**

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Co-defendant Enersys Engineering Corporation's ("Enersys") *Motion to Dismiss All Federal Claims and Request that Supplemental or Pendent Jurisdiction Not be Exercised* ("Motion to Dismiss"). (Docket No. 47). Having reviewed Plaintiffs' *Response in Opposition to Dismiss All Federal Claims* ("Response"), (Docket No. 50), the Court **GRANTS** Defendant's *Motion to Dismiss*, dismisses the federal claims and declines to exercise supplemental jurisdiction over Plaintiffs' claims which rely upon Puerto Rico law. Judgment of **dismissal without prejudice** shall be entered accordingly.

## I.   BACKGROUND

This case arises from a June 30, 2017 workplace accident. (Docket No. 43 ¶ 11). According to the *Amended Complaint*, while employed by co-defendant Enersys, plaintiff Mike A. López-Ramos ("Plaintiff" or "López-Ramos") was injured during repairs to a cement grinding and process tank at Cemex de Puerto Rico's ("Cemex") Cement Plant in Ponce, Puerto Rico. Id. ¶¶ 11-12, 15. The *Amended Complaint* avers that two weeks after the accident, Mr. López-Ramos' supervisor Charlie Quiñones ("Quiñones") proposed to pay his salary while on medical leave. Id. ¶ 20. Quiñones also "asked" that Plaintiff testify favorably as to Enersys in a "MSHA" investigation. Id. ¶ 21.[1] Mr. López-Ramos allegedly withheld information from the investigator and he was dismissed when he went to collect his third paycheck. Id. ¶¶ 23, 26. He states that "after filing the administrative complaint and while under medical treatment and rehabilitation, he was fired/terminated without just cause". Id. ¶ 27.

The *Amended Complaint* purports to state the following claims under the laws of the United States: (a) violations to Mr. López-

---

[1] The *Amended Complaint* does not define "MSHA." Since Plaintiffs invoke federal mine safety statutes, the acronym must necessarily refer to the U.S. Department of Labor's Mine Safety and Health Administration, a federal agency tasked with carrying out the provisions of the "Federal Mine Safety and Health Act of 1977", as amended by the "Mine Improvement and New Emergency Response Act of 2006." *See Mine Safety and Health Administration (MSHA)*, United States Department of Labor, https://www.msha.gov/about/mission (last visited on August 11, 2020). Moreover, Plaintiffs submitted correspondence from MSHA. (Docket 50-2).

Ramos' rights under the Mine Improvement and New Emergency Response Act of 2006 ("Miner Act"), the Federal Mine Safety and Health Act of 1977 ("Mine Act"), the Occupational Safety and Health Act of 1970 ("OSHA") and regulations thereunder; (b)  retaliation and reprisals under the Miner Act, the Mine Act, and OSHA and an unspecified "Whistle Blower Act;" and (c) violation of Mr. López-Ramos' rights under the Americans with Disabilities Act ("ADA") of 1990. Id. ¶¶ 31-33.  The *Amended Complaint* also purports to state claims under the following laws of the Commonwealth of Puerto Rico: (a) Articles 1802 and 1803 of the Civil Code of Puerto Rico; (b) Puerto Rico's Labor Laws including Public Law No. 80 of May 30, 1976, and an unnamed state law against retaliation; and (c) a claim under Puerto Rico's Work Accident Compensation Act, Act No. 45 of April 18, 1935. Id.  ¶¶ 34-36.

On February 3, 2020, defendant Enersys moved for dismissal of the *Amended Complaint*'s federal claims for failure to state a claim upon which relief can be granted and, consequently, dismissal of the state law claims because the Court should decline to exercise its supplemental jurisdiction under 28 U.S.C. 1367. (Docket No. 47). Among other grounds for dismissal, Enersys posits that: (a) the Mine Act and OSHA do not provide Mr. López-Ramos with a private right of action; (b) Mr. López-Ramos does not fall within the Federal Whistleblower Act's aegis because he was not a federal employee; and (c) Mr. López-Ramos failed to state a claim under

ADA or in the alternative, any ADA claim is time-barred. Id. 5-24.

For the below-stated reasons, the Court agrees with Enersys that the *Amended Complaint* does not state claims upon which relief can be granted under federal law and declines to exercise supplemental jurisdiction pursuant to 28 U.S.C.§ 1367(c).

## II.   LEGAL STANDARDS

A. Dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1):

Federal courts are courts "of limited jurisdiction, limited to deciding certain cases and controversies." Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 21 (1st Cir. 2016). The "party asserting jurisdiction has the burden of demonstrating its existence." Fina Air Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008). Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. There are two ways for a defendant to challenge the existence of subject matter jurisdiction: a "facial attack" or a "factual attack." Id.

"In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction." Compagnie Mar. Marfret v. San Juan Bay Pilots Corp., 532 F. Supp. 2d 369, 373 (D.P.R. 2008) (quotation omitted). The court must take all the allegations in the complaint as true and determine if the plaintiff sufficiently

evinced a basis of **subject matter jurisdiction**. *See* <u>Torres-Negron</u>
<u>v. J & N Records, LLC</u>, 504 F.3d 151, 162 (1st Cir. 2007). Whereas
"a factual attack asserts that jurisdiction is lacking on the basis
of facts outside of the pleadings." <u>Compagnie Mar. Marfret</u>, 532 F.
Supp. 2d at 373 (quotations omitted). When facing a factual attack,
the court is "not confined to the allegations in the complaint and
'can look beyond the pleadings to decide factual matters relating
to jurisdiction.'" <u>Rivera Torres v. Junta de Retiro Para Maestros</u>,
502 F. Supp. 2d 242, 247 n. 3 (D.P.R. 2007) (quotation omitted).

   B. <u>Dismissal for failure to state a claim upon which relief can</u>
      <u>be granted under Fed. R. Civ. P. 12(b)(6):</u>

     Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint
that "fails to state a claim upon which relief can be granted."
Under Rule 12(b)(6), the plaintiff must plead enough facts to state
a claim that is "plausible" on its face, and the "[f]actual
allegations must be enough to raise a right to relief above the
speculative level, […] on the assumption that all the allegations
in the complaint are true (even if doubtful in fact)." <u>Bell</u>
<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations
marks, citations and footnote omitted). "[A] plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do." <u>Id.</u>
Further, a complaint will not stand if it offers only "naked

assertion[s]" devoid of "further factual enhancements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).

To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory factual allegations as true. *See* <u>Nieto-Vicenty v. Valledor</u>, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). They may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55–56 (1st Cir. 2012) (quotation omitted).

### III. OPERATIVE FACTS

Pursuant to the standards governing dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the following facts, derived from the non-conclusory allegations in the *Amended Complaint* and documents filed alongside the *Response*, are taken as true for purposes of this motion:

1. Plaintiffs Mr. López-Ramos and his wife Patsy Pacheco-Díaz are residents of Peñuelas, Puerto Rico. (Docket No. 43 ¶ 6).

2. Defendant Cemex de Puerto Rico, Inc. ("Cemex"), is a corporation organized and existing under the laws of Puerto Rico per the records of the Puerto Rico Department of State.[2]

---

[2] *See Cemex de Puerto Rico, Inc.*, Registry of Corporations and Entities, Puerto Rico Department of State, https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=1272-111 (last visited on August 11, 2020).

3. Co-defendant Enersys is a corporation organized and existing under the laws of Puerto Rico according to the records of the Puerto Rico Department of State.[3] Enersys was Mr. López-Ramos' employer. (Docket No. 43 ¶ 9).

4. On June 30, 2017, Mr. López-Ramos was employed by Enersys and working with four (4) other workers on repairing a steel cement process and grinding tank at Cemex's Cement Plan in Ponce, Puerto Rico. Id. ¶ 11. Also present were two supervisors, Charlie Quiñones ("Quiñones") and Hector Acensio ("Acensio"), of Enersys and Cemex, respectively. Id. ¶¶ 11, 13.

5. Mr. López-Ramos' work consisted of removing the tank's old steel plates and replacing them with new ones. Id. ¶ 12. An incident occurred where three (3) steel plates detached and fell but did not injure the workers. Id. Each plate weighed about 50-60 pounds. Id. ¶ 13.

6. Mr. Quiñones reported the incident to Mr. Acensio. The latter did not react to the report. Id.

7. Plaintiff continued working as ordered by Mr. Quiñones. Once again, the steel plates detached and fell. This time, the

---

[3] See Enersys Engineering Corporation, Registry of Corporations and Entities, Puerto Rico Department of State, https://prcorpfiling.f1hst.com/ CorpInfo/CorporationInfo.aspx?c=134331-111 (last visited on August 11, 2020).

plates struck and injured Plaintiff, causing him to fall. <u>Id.</u>
¶¶ 14-15.

8. Plaintiff was taken to Cemex's infirmary where he was
   interviewed by the nurse and by Cemex's Safety Officer and he
   filled and signed an accident report.  <u>Id.</u> ¶¶ 16-17.

9. He was subsequently taken to the Puerto Rico Worker's
   Insurance Fund Emergency Room in Ponce where he has given
   medical care and discharged. <u>Id.</u> ¶¶ 18-19.

10. Around two weeks after the accident, Mr. Quiñones called Mr.
    López-Ramos and pleaded with him not to sue. He offered to
    pay Mr. López-Ramos' salary while the latter was under leave
    pursuant to the Puerto Rico's Workmen's Accident and
    Compensation Act. <u>Id.</u> ¶ 20.

11. After Enersys' Superintendent Edward Pérez's ("Pérez") agreed
    to pay Mr. López-Ramos' salary, Mr. Quiñones also asked Mr.
    López-Ramos to testify favorably as to Mr. Quiñones when
    interviewed by an MSHA inspector or investigator. Mr. López-
    Ramos was then interviewed by a MSHA representative and he
    omitted the first incident that occurred in the tank. <u>Id.</u> ¶¶
    21-23.

12. Plaintiff was later told by Mr. Pérez that the investigation
    went well for Enersys, which was only fined for failing to
    document the training for replacing the plates.  <u>Id.</u> ¶ 24.

13. Several days later, Mr. López-Ramos was summoned to Enersys' offices in Peñuelas to pick up the salary payment sent by Mr. Pérez. Id. ¶ 25.

14. He proceeded to pick up the same salary for three weeks, but after the third payment, he was told that that was his last week and Mr. Pérez would not pay him any further. Id. ¶ 26.

15. On January 26, 2018, Mr. López-Ramos filed a complaint under the Mine Act before the U.S. Department of Labor. (Docket Nos. 43 ¶ 29; 50-1). An investigation was conducted, and Mr. López-Ramos was informed that Cemex and Enersys were found in violation of law and were fined. (Docket No. 43 at 29).

16. Mr. López Ramos was fired by Enersys on June 2018 upon the completion of the MSHA investigation and while he was under treatment by the Puerto Rico State Insurance Fund. Id. ¶ 30a.

17. On December 11, 2018, Mr. López Ramos was released from treatment and service by the Puerto Rico State Insurance Fund. Id. at ¶ 30b.

18. On May 7, 2019, Plaintiff filed this lawsuit. Id. ¶ 30c.

19. On October 24, 2019, he filed a complaint or charge before the Equal Employment Opportunity Commission ("EEOC") for reprisal/retaliation. (Docket Nos. 43 ¶ 30d; 50-5).

20. Among other claims, Mr. López-Ramos' charge before the EEOC alleged ADA violations. (Docket No. 50-5 at 1).

21. On November 14, 2019, he received a "Dismissal and Notice of
    Rights" from the EEOC advising him that the EEOC was closing
    the file on his charge because: "[y]our *charge was not timely*
    *filed with the EEOC; in other words, you waited too long after*
    *the date(s) of the alleged discrimination to file your*
    *charge.*" (Docket Nos. 43 ¶ 30(e); 50-6).

## II.  ANALYSIS

**A. The Amended Complaint fails to state a claim under the Mine
   Act because the Act does not provide a private right of action
   enforceable in a United States District Court.**

"Congress has authorized the federal district courts to
exercise original jurisdiction in 'all civil actions arising under
the Constitution, laws, or treaties of the United States.'"
Municipality of Mayaguez v. Corporación para el Desarollo del
Oeste, Inc., 726 F.3d 8, 13 (1st Cir. 2013) (quoting Gunn v. Minton,
568 U.S. 251, 257 (2013)). *See also* 28 U.S.C. § 1331. "Often called
'federal-question jurisdiction,' this type of jurisdiction 'is
invoked by and large by plaintiffs pleading a cause of action
created by federal law,' such as an action brought under 42 U.S.C.
§ 1983." Id. (quoting Grable & Sons Metal Prods., Inc. v. Darue
Eng'g & Mfg., 545 U.S. 308, 312 (2005)). As relevant here, "private
rights of action to enforce federal law must be created by
Congress." Gonzalez-Hugues v. Puerto Rico, 2013 WL 149621, at *2
(D.P.R. 2013); *see also* Atl. Richfield Co. v. Christian, 140 S.
Ct. 1335, 1350 (2020) (quotation omitted) ("[A] suit arises under

the law that creates the cause of action."); Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979). If federal law does not grant a plaintiff a private right of action, the Court must consider whether there exists an *implied* federal right of action. The Supreme Court has identified four factors a court must consider when determining if an implied right of action exists:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Nashoba Commc'ns Ltd. P'ship No. 7 v. Town of Danvers, 893 F.2d 435, 439 (1st Cir. 1990) (quoting Cort v. Ash, 422 U.S. 66, 78 (1976)).

Since Cort, the Supreme Court has clarified "that whether Congress intended to provide a private right of action […] is '[t]he central inquiry,' and that the other three factors are entitled to considerably less weight." Buntin v. City of Bos., 857 F.3d 69, 75 (1st Cir. 2017) (quoting Touche Ross & Co., 442 U.S. at 575–76). More recently, the Supreme Court reiterated this stance in Ziglar v. Abbasi when it stated that it has "adopted a far more cautious course, clarifying that, when deciding whether to

recognize an implied cause of action, the 'determinative' question is one of statutory intent." _Ziglar v. Abbasi_, 137 S. Ct. 1843, 1848 (2017) (quotation omitted).

As previously stated, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." _Alexander v. Sandoval_, 532 U.S. 275, 286 (2001). For example, the _Alexander_ opinion held that there is no private right of action to enforce disparate impact regulations under Title VII of the Civil Rights Act of 1964. _Id._; _Cf._ _Stoneridge Inc. Partners, LLC v. Scientific–Atlanta, Inc._, 552 U.S. 148, 158, 165 (2008) (holding that although the Securities Exchange Act does not include a private cause of action for Section 10(b) violations, there is a right of action implied in the Act's words and its implementing regulation and declining to extend said right "beyond its boundaries"). Therefore, "**[i]f the statute does not itself so provide, a private cause of action will not be created through judicial mandate.**" _Ziglar_, 137 S. Ct. at 1856 (emphasis added). Without statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." _Alexander_, 532 U.S. at 286-287. Thus, there is little doubt that "'a private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred.'" _Allco Renewable Energy Limited v. Massachusetts_

_Electric Company_, 875 F.3d 64, 69-70 (1st Cir. 2017) (quoting _Armstrong v. Exceptional Child Center, Inc._, 575 U.S. 320,332 (2015)).

Notably, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." _Alexander_, 532 U.S. at 290. That suggestion may be "so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute (such as language making the would-be plaintiff 'a member of the class for whose benefit the statute was enacted') suggest the contrary." _Id._ (citation omitted). Similarly, finding for example, "that a damages remedy is implied by a provision that makes no reference to that remedy may upset the careful balance of interests struck by the lawmakers." _Hernandez v. Mesa_, 140 S. Ct. 735, 742 (2020).

The _Amended Complaint_ alleges that the MSHA investigated the accident at issue in this case.[4] Mr. López-Ramos invokes the provisions of the Mine Act and he appended a letter from the MSHA confirming that his accident was investigated. (Docket Nos. 43 ¶¶ 22, 29 and 32; 50-2). Moreover, Enersys has not questioned whether the Mine Act applied to the work it was conducting at Cemex's plant. The Court therefore assumes for purposes of the pending

---

[4] _See_ Section III, _infra_, at ¶ 15.

*Motion to Dismiss* that Cemex's Cement Plant in Ponce is a "mine" under the Mine Act, a term which includes facilities appurtenant to land where minerals are extracted and used in the milling of such minerals. *See* 30 U.S.C. 802(h)(1); CalPortland Company, Inc. v. Federal Mine Safety and Health Review Commission, 839 F.3d 1156 (D.C. Cir. 2016) (case under the Mine Act's anti-discrimination/whistleblower provision and arising from complainant's employment at a cement plant). The Court also assumes that Enersys qualifies as an "operator" which includes "any independent contractor performing services or construction at such mine." 30 U.S.C. § 802(d). Lastly, the Court also assumes that Mr. López-Ramos qualifies as a "miner" which is defined as "any individual working in a coal or other mine." Id. § 802(g).

However, as explained below, the provisions of the Mine Act **do not** confer an express **or** an implied private right of action enforceable in a United States District Court to miners who suffer personal injuries due to violations of the act. Nor do they confer such a right to miners or applicants for employment who suffer violations of its anti-discrimination/whistleblower provision. **Consequently, the *Amended Complaint* does not state a claim upon which relief can be granted under the Mine Act.**[5]

---

[5] The Legislative History of the Mine Act does not show that the drafters of the Act intended to provide miners with a private right of action in federal district court. *See* S.Rep. No. 95-181, p. 4 (1977), U.S.Code Cong. & Admin.News 1977, p. 3401, Legislative History of the Federal Mine Safety and Health Act of 1977 (Committee Print prepared for the Subcommittee on Labor of the Senate

Congress enacted the Mine Act to "'protect the health and safety of the Nation's ... miners.'" CalPortland Company, Inc., 839 F.3d 1156 (quoting Thunder Basin Coal Co., 510 U.S. at 202). To achieve its goals, the Mine Act "charges two separate agencies with complementary policymaking and adjudicative functions." Id. (quoting Prairie State Generating Co. LLC v. Sec'y of Labor, 792 F.3d 82, 85 (D.C. Cir. 2015)). The MSHA "sets regulatory standards of mine safety, conducts regular mine inspections, and issues citations and orders in response to violations." Id. (citation omitted). Whereas the Federal Mine Safety and Health Commission ("the Commission") is "an adjudicatory body established as independent of the Secretary, [which] reviews challenges to MSHA's actions." Id.; see also Thunder Basin Coal Co., 510 U.S. at 202–04, 205 n.5.

Section 104 of the Mine Act empowers the Secretary of Labor ("the Secretary") or their authorized representative to issue citations upon a belief "that an operator of a coal or other mine" subject to the Act has violated it "or any mandatory health and safety standard, rule, order or regulation promulgated" pursuant to the Act. 30 U.S.C. § 814(a). It also empowers them to issue orders or enforcement for violations of mandatory health and safety standards. Id. § 814 (b)-(h). Section 105 of the Mine Act contains

Committee on Human Resources), Ser. No. 95-2, p. 592 (1978) (Leg.Hist.); see also Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 209 (1994).

its procedure for enforcement. Id. § 815. It authorizes the
Secretary to impose civil penalties which may be contested before
the Commission. Id. § 815 (a)-(b) and (d). It also authorizes
operators to apply to the Commission for relief from orders for
enforcement issued under Section 104. Id. § 815(b)(2). Section
106, on the other hand, provides for judicial review of Commission
Orders before the United States Court of Appeals for the circuit
where a violation of the Mine Act is alleged to have occurred or
before the United States Court of Appeals for the District of
Columbia Circuit. Id. § 816. Lastly, Section 108 authorizes the
Secretary to institute civil actions for enforcement before the
United States District Court for the district against operators.
Id. § 818(a)(1). Notably, this "regulatory, administrative,
enforcement, and judicial review procedures provided to the
Secretary" in the Mine Act "'**strongly undermines the suggestion
that Congress also intended to create by implication a private
right of action in a federal district court but declined to say so
expressly.'**" Byrd v. Revett, LLC, 2015 WL 12780578, at *3 (D. Mont.
2015), report and recommendation adopted, 2015 WL 12780579 (D.
Mont. 2015) (quoting Williams v. United Airlines, Inc., 500 F.3d
1019, 1024 (9th Cir. 2007) (emphasis added).

     Thus, none of the Mine Act's health and safety provisions
expressly confers miners with a private right of action to injured
miners and recourse to a United States District Court. Nor do they

evince an implied statutory intent to do so. Consequently, "and in the context of personal injury claims brought by miners against mine owners and operators, **the federal district courts have consistently concluded that the Mine Safety Act <u>does not</u> provide an implied or private right of action in the federal district courts in favor of miners for advancing legal claims against mine operators.**" <u>Byrd</u>, 2015 WL 12780578, at *4 (emphasis added) (citing <u>Cobos v. Stillwater Mining Co.</u>, 2012 WL 6018147, *5 (D. Mont. 2012)). Circuit Courts and District Courts have reiterated the same for years. *See* <u>Howard v. Milam</u>, 905 F.2d 1529, *4 (4th Cir. 1990); <u>Raymer v. United States</u>, 660 F.2d 1136, 1140 (6th Cir. 1981); <u>Horton v. Murray Energy Corp.</u>, 2013 WL 4017050, at *4 (D. Utah 2013)(holding that "The Mine Act contains no such language that 'unambiguously confers' individual rights on" a plaintiff); <u>Hunley v. Glencore, Ltd., Inc.</u>, 2012 WL 1071271, *9 (E.D. Tenn. 2012); <u>King v. Island Creek Coal Company</u>, 339 F. Supp. 2d 735, 741 (W.D. Va. 2004); <u>Browning v. Geupel Construction Co.</u>, 891 F. Supp. 275, 278 (S.D. W. Va. 1995). The Mine Act also does not confer an express or implied private right of action enforceable in a United States District Court to miners or applicants for employment who suffer violations of its anti-discrimination/whistleblower provision. *See e.g.* <u>Parke v. Bethenergy Mines, Inc.</u>, 732 F. Supp. 587, 589 (W.D. Pa. 1990) (citation omitted) (holding that a claim alleging discrimination in violation of the Mine Act could not

proceed because the Act does not provide a private right of action).

Section 105(c)(1) of the Mine Act contains an anti-discrimination/whistleblower provision which reads as follows:

> No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner, representative of miners or applicant for employment in any coal or other mine subject to this chapter because such miner, representative of miners or applicant for employment has filed or made a complaint under or related to this chapter, including a complaint notifying the operator or the operator's agent, or the representative of the miners at the coal or other mine of an alleged danger or safety or health violation in a coal or other mine, or because such miner, representative of miners or applicant for employment is the subject of medical evaluations and potential transfer under a standard published pursuant to section 811 of this title or because such miner, representative of miners or applicant for employment has instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding, or because of the exercise by such miner, representative of miners or applicant for employment on behalf of himself or others of any statutory right afforded by this chapter.

30 U.S.C. § 815(c). This provision "prohibits a mine operator from discriminating against a miner or interfering with a miner's statutory rights because the miner engaged in protected activity." *See* <u>CalPortland Company, Inc.</u>, 839 F.3d at 1156 (citation omitted). Section 105(c) also establishes procedures for the filing and investigation of complaints made by "'[a]ny miner or applicant for

employment'" and authorizes the Commission to adjudicate contested complaints." Id. (citing 30 U.S.C. § 815(c)(2)–3)); see also Simpson v. FMSHRC, 842 F.2d 453, 456 n.3 (D.C. Cir. 1988).

Indeed, section 105(c)(2) provides that any miner or applicant for employment invoking the rights conferred by Section 105(a)(1) must file a complaint with the Secretary within 60 days of the occurrence of such violation:

> Any miner or applicant for employment or representative of miners who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may, within 60 days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate. Such investigation shall commence within 15 days of the Secretary's receipt of the complaint, and if the Secretary finds that such complaint was not frivolously brought, the Commission, on an expedited basis upon application of the Secretary, shall order the immediate reinstatement of the miner pending final order on the complaint. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall immediately file a complaint with the Commission, with service upon the alleged violator and the miner, applicant for employment, or representative of miners alleging such discrimination or interference and propose an order granting appropriate relief. The Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section) and thereafter shall issue an order, based upon findings of fact, affirming, modifying, or vacating the Secretary's proposed order, or directing other appropriate relief. Such order shall become final 30 days after its issuance. The Commission shall have authority in such proceedings to require a person committing a violation of this subsection to take such affirmative action to abate the

> violation as the Commission deems appropriate,
> including, but not limited to, the rehiring or
> reinstatement of the miner to his former position with
> back pay and interest. The complaining miner, applicant,
> or representative of miners may present additional
> evidence on his own behalf during any hearing held
> pursuant to his paragraph.

30 U.S.C. § 815(c)(2). If the Secretary's investigation concludes

a violation of Section 105(c)(1) has occurred, then

"the complainant shall have the right, within 30 days of notice of

the Secretary's determination, to file an action in his own behalf

before the Commission." 30 U.S.C. § 815(c)(3). Any order issued by

the Commission pursuant to Section 105(c) is subject to judicial

review pursuant to Section 106. Id. Thus, the Commission's

disposition of a miner's or applicant's complaint under Section

105 is subject to review before the United States Court of Appeals

where a violation of the Act is alleged to have occurred or before

the United States Court of Appeals for the District of Columbia

Circuit. See 30 U.S.C. § 816(a)(1).

The Mine Act's anti-discrimination/whistleblower provision in

Section 105(c) and the judicial review provisions in Section 106

**do not** direct miners or applicants for employment to proceed before

a United States District Court. Instead, they direct miners or

applicants for employment to proceed before the Secretary, the

Commission, and the United States Courts of Appeal. As noted

earlier, "[t]he express provision of one method of enforcing a

substantive rule suggests that Congress intended to preclude

others." <u>Alexander</u>, 532 U.S. at 290. Where, as here, a federal statute does not state whether an aggrieved employee may bring a civil action in district court to allege a violation of that federal law, "**implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best**." <u>Touche Ross</u>, 442 U.S. at 571 (emphasis added). Accordingly, the Court finds that sections 105(C) and 106 of the Mine Act **do not** evince a statutory intent to confer neither an express nor an implied private right of action to proceed before a United States District Court for violations of the Mine Act's anti-discrimination/whistleblower provision.

**B. The Amended Complaint fails to state claim under OSHA because the Act does not provide for a private cause of action.**

As Defendant correctly posits in the *Motion to Dismiss*, Plaintiff does not allege in the *Amended Complaint* that he filed a complaint under OSHA to inform about potential OSHA violations. (Docket No. 47 at 14-18). Be that as it may, like the Mine Act, OSHA **does not provide for a private right of action for personal injury**. Nor does OSHA provide a private right of action for violation of its anti-discrimination/whistleblower provision. Consequently, the *Amended Complaint* **does not** state a claim upon which relief can be granted under OSHA. (Docket No. 43 ¶ 31).

The First Circuit determined decades ago that OSHA does not provide for a private right of action for personal injury. 29 U.S.C.§ 653 (b)(4) provides that:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

Pursuant to this provision, **"every court faced with the issue has held that OSHA creates no private right of action."** *See* Pedraza v. Shell Oil Co., 942 F.2d 48, 52 (1st Cir. 1991) (emphasis added); De Jesús-Colón v. Compañía de Parques Nacionales de Puerto Rico, 2012 WL 14679 at * 5 (D.P.R. 2012). Even before the Pedraza opinion, the First Circuit had held "[t]he legislative history of § 653(b)(4) shows that the intent of the provision was merely to ensure that OSHA was not read to create a private right of action for injured workers which would allow them to bypass the otherwise exclusive remedy of worker's compensation." Pratico v. Portland Terminal Co., 783 F.2d 255, 266 (1st Cir. 1985).

OSHA's anti-discrimination/whistleblower provision is contained in Section 11(c) of OSHA. *See* 29 U.S.C. § 660(c). Section 11(c)(1) provides:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding

> or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

Id. Like the Mine Act's section 105(c)(2), OSHA's section 11(c)(2) also directs the employee to file a complaint with the Secretary of Labor:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

29 U.S.C. 105(c)(2). The above-quoted text shows it is the Secretary **(and not the aggrieved employee)** who is authorized by OSHA to bring an action in a United States District Court to seek redress for a violation of OSHA's anti-discrimination/whistle-blower provision. **Accordingly, Circuit and District courts have repeatedly found that OSHA "does not authorize a private cause of action for discriminatory retaliation."** *See* Mulvaney v. City of Rochester, 2004 WL 1660274 (W.D.N.Y. 2004)(finding that plaintiff lacked standing and the Court lacked jurisdiction to hear the retaliation complaint)(emphasis added); *see also* Abel v. Niche

Polymer, LLC, 2020 WL 3421480, at *5 (S.D.W. Va. 2020) (holding
that "neither the federal nor the State's OSHA statutes can serve
as a basis for [plaintiff]'s retaliatory discharge claim"); Lewis
v. DBI Servs., 2019 WL 3220006, at *2 (W.D. Tex. 2019)("OSHA does
not provide a private right of action; in other words, a private
individual cannot sue for retaliatory discharge."); Fletcher v.
United Parcel Service, Local Union 705, 155 F.Supp.2d 954
(N.D.Ill.2001); Washington v. M. Hanna Const. Inc., 299 F. App'x
399, 401 (5th Cir. 2008); Taylor v. Brighton Corp., 616 F.2d 256
(6th Cir. 1980). Thus, Plaintiff's purported OSHA claim must be
dismissed.

**C. The Amended Complaint does not state a claim under the Federal
Whistleblower Act because Mr. López-Ramos was not a federal
employee.**

   The Whistleblower Protection Act of 1989 is codified at 5
U.S.C. § 2302. Congress enacted it to provide "federal employees
with the right to seek corrective action from the [Merit Systems
Protection] Board ["MSPB"] whenever a personnel action has been
taken in retaliation for certain whistleblowing activities.'"
Mulero Abreu v. Oquendo-Rivera, 729 F.Supp.2d 498, 523 (D.P.R.
2010) (quoting Fields v. DOJ, 452 F.3d 1297, 1302 (Fed. Cir. 2006).
The *Amended Complaint* does not aver that Mr. López-Ramos was a
federal employee within the meaning of said term as defined in 5
U.S.C. § 2105. Instead, the *Amended Complaint* avers he was an
Enersys employee at all times until the alleged actions giving

rise to the case at bar occurred.[6] The *Amended Complaint* therefore fails to state a claim upon which relief can be granted under the Whistleblower Protection Act of 1989 because Mr. López-Ramos was not a federal employee. *See* <u>Negron-Santiago v. San Cristobal Hosp.</u>, 764 F. Supp. 2d 366, 371 (D.P.R. 2011) (dismissing a claim under the Whistleblower Protection Act of 1989 because Plaintiffs were not federal employees); <u>Mulero Abreu</u>, 729 F. Supp. 2d at 524 (same).

**D. The Amended Complaint fails to state claim under the ADA because Plaintiff filed his EEOC charge late and thus did not exhaust administrative remedies.**

The ADA forbids employers from terminating a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). It is meant "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." <u>Gray v. Cummings</u>, 917 F.3d 1, 14 (1st Cir. 2019) (quoting 42 U.S.C. § 12101(b)(1)).

Further, the ADA mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; *See also* <u>Thornton v. United Parcel Serv., Inc.</u>, 587 F.3d 27, 31 (1st Cir. 2009). A claimant under the ADA "must exhaust administrative remedies under section 2000e-5(e)(1) of Title VII **as a prerequisite to filing suit before this Court**."

---

[6] *See* Section III, *infra*, at ¶ 4.

Mercado Cordova v. Walmart Puerto Rico, Inc., 369 F. Supp. 3d 336, 349 (D.P.R. 2019) (citing Zipes v. Trans World Airlines, 455 U.S. 385, 392 (1982)) (emphasis added). Specifically, this Section provides that a charge "shall be filed" with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," **or** within three hundred days if "the person aggrieved has initially instituted proceedings with [an authorized] State or local agency." 42 U.S.C. § 2000e-5(e).

Therefore, a failure to exhaust administrative remedies by not filing a charge with the EEOC or by not instituting a proceeding in a state or local agency within the proscribed timeframe, precludes a claimant from filing in federal court. The purpose of filing an administrative charge "as a prerequisite to commencing a civil action is to promote early conciliation between the parties, as well as to provide prompt notice of the claim to the employer." Gonzalez-Nieves v. Miranda, 264 F. Supp. 3d 357, 361 (D.P.R. 2017) (citation omitted). The Supreme Court has stated that the timeliness requirement under Section 2000e-5(e) is "mandatory," and failure to file within the time-period means a potential plaintiff "lose[s] the ability to recover for [the alleged discrimination]." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-110 (2002); *see also* Martinez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 77 (1st Cir. 2016).

In the case at bar, the EEOC dismissed Mr. López-Ramos charge as time-barred on November 8, 2019.[7] Mr. López-Ramos however filed the present suit on May 7, 2019 (Docket No. 1), that is before he received a "Dismissal and Notice of Rights" letter from the EEOC which granted him ninety (90) days to file suit. Consequently, Mr. López-Ramos did not exhaust administrative **before** filing the present suit. This District has stated that an employee must "wait for the EEOC to give notice of the employee's right to sue, which generally occurs in what has been termed a right-to-sue letter." Montalvo-Figueroa v. DNA Auto Corp., 414 F. Supp. 3d 213, 229 (D.P.R. 2019) (citing Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009)).

Most glaringly, however, is the fact that the *Amended Complaint* fails to state a claim upon which relief can be granted under the ADA. In fact, Plaintiff only references claims under said statute on two occasions: first, when he cites the ADA when he invokes the Court's jurisdiction, and  second, when alleging his third cause of action wherein he simply avers that his "rights under the Americans with Disabilities Act of 1990 (42 U.S.C. 121010) [sic], and any other rights under the other state and federal labor statutes were and continued to be violated by co-defendants." (Docket No. 43 ¶ 33). Yet, he fails to include any

---

[7] *See* Section III, *infra*, at ¶ 21.

factual allegations which might lead the Court to conclude that a violation of ADA occurred. Therefore, dismissal of the ADA claims is proper.

### E. Since the purported federal claims are being dismissed at the pleadings stage, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).

First Circuit case law is clear "that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020). Where, as here, the federal claims are properly dismissed, a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims. *See e.g.,* Massó-Torrellas v. Municipality of Toa Alta, 845 F.3d 461, 469-70 (1st Cir. 2017); *see also*, Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, (1988)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors [...] will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Since the federal claims are being dismissed at the pleadings stage, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) and all supplemental claims under Puerto Rico law will be dismissed without prejudice.

The Court likewise declines to exercise supplemental jurisdiction over Mr. López-Ramos' spouse, Patsy Pacheco-Diaz, and their minor children NL-P and BL-P's derivative claims against Enersys. (Docket No. 1 ¶¶ 6-7, 39, 43). Thus, the Court also **dismisses without prejudice** all claims by Mr. López-Ramos' spouse and minor children.

### VI.   CONCLUSION

"*In the last analysis, we must remember that federal Courts are courts of limited jurisdiction. In many cases, as here, our duty is done when we enforce a valid statute as Congress wrote it.*" Miranda v. Ponce Federal Bank, 948 F.2 41, 49 (1st Cir. 1991) (affirming dismissal of complaint for failure to state a claim upon which relief can be granted under RICO). In accordance with the foregoing, the Court **GRANTS** Defendant Enersys Engineering Corporation's *Motion to Dismiss All Federal Claims and Request that Supplemental or Pendent Jurisdiction Not be Exercised* (Docket No. 47).

Judgment of dismissal **without prejudice** shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of August 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge